IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **LYVENTHA MOORE,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 12-1299-RDR |
| | ) |
| **CAROLYN W. COLVIN, Acting** | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

On April 21, 2009, plaintiff filed applications for social security disability insurance benefits and supplemental security income benefits. These applications alleged a disability onset date of April 5, 2009 which was plaintiff's last date of employment. On November 17, 2010, a hearing was conducted upon plaintiff's applications. The administrative law judge (ALJ) considered the evidence and decided on December 3, 2010 that plaintiff was not qualified to receive benefits. Plaintiff asked for review of the ALJ's decision by the Appeals Council which was denied on June 19, 2012. Thus, the denial of benefits is the decision of defendant. This case is now before the court upon plaintiff's motion to reverse and remand the decision to deny plaintiff's applications for benefits.

I. STANDARD OF REVIEW

To qualify for disability benefits, a claimant must establish that he or she was "disabled" under the Social

Security Act, 42 U.S.C. § 423(a)(1)(E), during the time when the claimant had "insured status" under the Social Security program. See Potter v. Secretary of Health & Human Services, 905 F.2d 1346, 1347 (10th Cir. 1990); 20 C.F.R. §§ 404.130, 404.131. To be "disabled" means that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

For supplemental security income claims, a claimant becomes eligible in the first month where he or she is both disabled and has an application on file. 20 C.F.R. §§ 416.202-03, 416.330, 416.335.

The court must affirm the ALJ's decision if it is supported by substantial evidence and if the ALJ applied the proper legal standards. Rebeck v. Barnhart, 317 F.Supp.2d 1263, 1271 (D.Kan. 2004). "Substantial evidence" is "more than a mere scintilla;" it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id., quoting Richardson v. Perales, 402 U.S. 389, 401 (1971). The court must examine the record as a whole, including whatever in the record fairly detracts from the weight of the defendant's decision, and on that basis decide if substantial evidence supports the defendant's decision. Glenn v. Shalala, 21 F.3d 983, 984 (10th

2

Cir. 1994) (quoting Casias v. Secretary of Health & Human Services, 933 F.2d 799, 800-01 (10th Cir. 1991)). The court may not reverse the defendant's choice between two reasonable but conflicting views, even if the court would have made a different choice if the matter were referred to the court de novo. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004)).

II. THE ALJ'S DECISION (Tr. 11-21).

There is a five-step evaluation process followed in these cases which is described in the ALJ's decision. (Tr. 12-13). First, it is determined whether the claimant is engaging in substantial gainful activity. Second, the ALJ decides whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments which are "severe." At step three, the ALJ decides whether the claimant's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. Next, the ALJ determines the claimant's residual functional capacity and then decides whether the claimant has the residual functional capacity to perform the requirements of his or her past relevant work. Finally, at the last step of the sequential evaluation process the ALJ determines whether the claimant is able to do any other work considering his or her

3

residual functional capacity, age, education and work experience.

In this case, the ALJ decided plaintiff's application should be denied on the basis of the fifth and last step of the evaluation process. The ALJ decided that plaintiff maintained the residual functional capacity to perform jobs that existed in significant numbers in the national economy.

The ALJ made the following specific findings in her decision. First, plaintiff meets the insured status requirements for Social Security benefits through December 31, 2013. Second, plaintiff did not engage in substantial gainful activity after April 5, 2009, the alleged onset date of disability. Third, plaintiff has the following severe impairments: chronic pain vs. fibromyalgia; polyarthritis, degenerative changes of the spine and bilateral knees, obesity, sleep apnea and depressive disorder. As to plaintiff's depressive disorder, the ALJ found that it caused: a mild restriction in plaintiff's activities of daily living; moderate difficulties in social functioning; moderate difficulties in concentration, persistence or pace; and no episodes of decompensation. (Tr. 14-15). As to plaintiff's obesity, the ALJ with little or no elaboration stated the she considered the effects of plaintiff's obesity when determining plaintiff's residual functional capacity ("RFC"). (Tr. 15).

4

Fourth, the ALJ found that plaintiff does not have an impairment or combination of impairments that meet or medically equal the Listed Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Fifth, the ALJ determined that plaintiff has the RFC to perform:

> sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), except the claimant should never climb ladders, ropes or scaffolds, crawl or crouch. The claimant can occasionally climb stairs and ramps, balance, stoop and kneel. The claimant should avoid concentrated exposure to cold, heat and vibration. Additionally, the claimant is limited to unskilled work and occasional interaction with the public and co-workers.

(Tr. 15). This RFC assessment is contrary to plaintiff's testimony before the ALJ. Plaintiff testified that she could only sit or stand for five minutes at a time. (Tr. 34). She also testified that she lies down for three to four hours a day. (Tr. 40). She further stated that she falls asleep frequently during the day. (Tr. 39-40). The RFC assessment is also contrary to assessments by Dr. April Harris on September 24, 2010 (Tr. 515-16) and by Anita Louison, a physician's assistant, on June 30, 2010 (Tr. 479-80). The ALJ said that these assessments were given little weight because Dr. Harris only saw plaintiff twice, the assessments are not consistent with the medical record as a whole ("particularly Dr. Morrow's examination that evidences the [plaintiff] is able to perform

5

postural and manipulative movements") and because Louison is a physician's assistant, not "an acceptable medical source." (Tr. 18-19). Dr. Morrow's report (which was based upon an April 24, 2010 examination) indicated that plaintiff had normal range of motion in all joints, a negative straight leg raising test and that plaintiff could pick up a coin, open a door and fasten a button. (Tr. 431). But, Dr. Morrow's report also stated that plaintiff had "severe difficulty in all orthopedic maneuvers based on foot pain and lumbar discomfort." (Tr. 432). This included severe difficulty in getting on and off the examining table; severe difficulty with heel and toe walking; severe difficulty squatting and arising from the sitting position and severe difficulty hopping. (Tr. 432). It also noted that plaintiff used a cane and walked with a limp. (Tr. 432). This was not mentioned by the ALJ.

As for plaintiff's sleep apnea and daytime sleepiness, the ALJ stated that: "[plaintiff] states that she uses her CPAP regularly, she has not been diagnosed with narcolepsy and no physician of record has stated that [plaintiff] is unable to work due to her sleep apnea." (Tr. 18). The ALJ's opinion also implies perhaps that plaintiff's problems with daytime sleepiness are not as severe as plaintiff alleges because, while plaintiff stated that she was fired from her last job for falling asleep, the employer stated that plaintiff was

6

terminated due to attendance and attitude.[1]  The ALJ's opinion does not discuss an evaluation of plaintiff's sleep disorder which concluded that plaintiff had severe sleep apnea which, together with plaintiff's irregular use of CPAP, explain her "hypersomnia" (or daytime sleepiness) and that weight loss will be necessary for CPAP to be effective in controlling the problem.  (Tr. 422-23).

Sixth, the ALJ found that plaintiff was unable to perform her past relevant work as a home health aide and certified nurse's aide.  But, seventh, plaintiff was capable of performing jobs that existed in significant numbers in the national economy.  This last finding was based upon the testimony of a vocational expert that, considering plaintiff's age, education, work experience and RFC, plaintiff could perform the work of an optical goods assembler, a printed circuit board assembler, and a document preparer.  (Tr. 20).

III.  THE ALJ'S DECISION DOES NOT COMPORT WITH SSR 96-8P.

One of the arguments made by plaintiff to reverse the decision to deny benefits in this case is that the ALJ did not follow the guidelines of SSR 96-8p in making her RFC findings. The court agrees.

---

[1] The ALJ does not specifically state that she disbelieves plaintiff's statement that she was fired for sleeping on the job.  Rather she uses plaintiff's statement as grounds to question the credibility of plaintiff's claim that she cannot work because of pain.

Part of the task of deciding whether the ALJ applied the correct legal standards is determining whether the ALJ followed the requirements of SSR 96-8p.[2] The "policy interpretation" of SSR 96-8p states in part that:

> The RFC assessment must be based on <u>all</u> of the relevant evidence in the case record, such as:
> *Medical history,
> *Medical signs and laboratory findings,
> *The effects of treatment . . .,
> *Reports of daily activities,
> *Lay evidence,
> *Recorded observations,
> *Medical source statements,
> *Effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment,
> *Evidence from attempts to work,
> *Need for a structured living environment, and
> *Work evaluations, if available.

SSR 96-8p, 1996 WL 374184 *5 (emphasis in the original). The ruling also requires that the RFC assessment include "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence (e.g., daily activities, observations)." Id. at *7. The ALJ "must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . [and] must also explain any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. . . . [and] must

---

[2] Social security rulings do not carry the force of law, but they are entitled to deference unless they are plainly erroneous or inconsistent with the Social Security Act. Andrade v. Secretary of Health and Human Services, 985 F.2d 1045, 1051 (10th Cir. 1993).

include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." Id.

The ALJ did not follow the requirements of SSR 96-8p in making an RFC assessment in this case. Plaintiff was diagnosed with moderate to severe sleep apnea in December 2004. (Tr. 284). There are numerous references in the record indicating that plaintiff has problems falling asleep during the daytime, when she is talking, driving and watching TV. (Tr. 285 – Dr. Bleicher report – 11/9/2004; Tr. 189, 192-93 – plaintiff's function report – 5/21/2009; Tr. 206 – plaintiff's request for reconsideration – 8/25/2009; Tr. 224-26 – plaintiff's function report – 10/25/2009; Tr. 236-37 – statement of Teresa Moore – 10/26/2009; Tr. 247-48 – plaintiff's function report – 2/18/2010; Tr. 388, 392 – report to Shawnee County Health Agency – 5/22/2009; Tr. 398 – report to Dr. McKee – 5/21/2009; Tr. 417 – Swope Health medical notes – 10/6/2009; Tr. 421-23 – report of Dr. Daughety – 12/6/2009); Tr. 468-69 – Peoples Health Center records – 10/12/2004; Tr. 480 – statement of Anita Louison ("narcotics cause sleepiness") – 6/30/2010; Tr. 482 – report of Jean Nelson ARNP - 8/16/2010; Tr. 495 – report of Nicholas Schau - 7/2/2010; Tr. 508 – Marion Clinic Notes - 8/18/2010; Tr. 513 – Report of Dr. Tyler Grindal – 9/23/2010); Tr. 516 – Statement of

9

Dr. April Harris – 9/24/2010). A review of these references suggests that the problem has grown more significant over time. Plaintiff's sister-in-law, Teresa Moore, made a statement that when plaintiff sits down, she falls to sleep. (Tr. 236). This aspect of Teresa Moore's statement and other parts of the statement which indicate that plaintiff may be disabled because of pain are not discussed by the ALJ.[3] The ALJ also does not discuss the report by Dr. Daughety which references hypersomnia and concluded:

> [Plaintiff's] Obstructive Sleep Apnea Syndrome is severe and very difficult to control in the laboratory, requiring pressures so high that it makes it difficult to control mask and mouth leak. This and her history of very irregular use of CPAP at home explain her hypersomnia. . . .
> Treatment – 1) Positive air pressure is at the limits of its capacity in her case. If it's possible to arrange for APAP 10-20 cwp, that should be done. Alternately, so long as she loses weight steadily, CPAP at 16 owp is adequate most of the time. In either case, it should be used with heated humidifier and memory card via Swift LT for [h]er [m]edium nasal pillows with chinstrap. 2) Weight loss will be necessary for CPAP to continue to be effective controlling this problem. If she gains weight, tracheostomy will be required to control her OSA. 3) Efforts to optimize nasal patency might include

---

[3] The ALJ's take on Teresa Moore's statement is as follows: "The claimant's sister-in-law stated that the claimant helps take care of her grandchild, she has difficulties with some of her daily personal care, prepares meals, performs light housework, shops in stores and has no problems getting along with family and friends." (Tr. 17). The statement, however, indicates that before her illness, plaintiff was able to take total care of herself and her grandchild, but now plaintiff requires help with her personal care, shoes and care of her granddaughter. (Tr. 235). Teresa Moore indicated that plaintiff's food preparation and housework was limited to making sandwiches and was interrupted by the need to sit and stop and sleep. (Tr. 236). She also stated that it took "forever" for plaintiff to do a small amount of shopping. Tr. 237.

> topical nasal steroid or even consideration of rhinoplasty.

(Tr. 422-23). The ALJ may make reference to this report, perhaps attributing it to Dr. David Dembinski (who appears to have referred plaintiff to Dr. Daughety for the report). (Tr. 16). But, the ALJ does not discuss the substance of the report or the above-excerpted conclusions. Overall, the ALJ acknowledges that plaintiff has sleep apnea, but seems to conclude that plaintiff's daytime sleepiness does not materially affect her RFC because: 1) she has not been diagnosed with narcolepsy; 2) no doctor has stated she is unable to work due to sleep apnea; and perhaps 3) her last employer said she was fired because of "attendance and attitude", not for sleeping on the job. (Tr. 18).

This is not an adequate assessment or discussion of the evidence for the following reasons. First, there is no medical statement in the record which casts doubt upon plaintiff's complaints of sleepiness and there is an acknowledgement in the record that, related to her sleep apnea, plaintiff may have "hypersomnia" which is daytime sleepiness. Therefore, the absence of a narcolepsy diagnosis does not determine the question of whether plaintiff has a functional limitation because of sleep apnea. Second, while the ALJ is correct in stating that no doctor has stated that plaintiff is unable to work due to sleep apnea, this is a discussion of an absence of

11

evidence – not a discussion of the evidence on the record as required by SSR 96-8p. Moreover, as stated by the Tenth Circuit in <u>Fleetwood v. Barnhart</u>, 211 Fed.Appx. 736 *3 n.3 (10th Cir. 1/4/2007), we may assume that a doctor's failure to discuss a plaintiff's ability to work is simply because he was "focused solely on treating her medical problems," not because the doctor believed the plaintiff could work. Additionally, it is the ALJ's job, not a doctor's job, to make an RFC assessment. Obviously, the ALJ must consider the medical evidence and the other evidence listed in SSR 98-6p. If the evidence from various sources is that plaintiff cannot stay awake while doing sedentary activity, then the ALJ should conclude that plaintiff does not have the ability to sustain substantial gainful employment, regardless of whether a doctor has been asked to make such a conclusion.

Finally, plaintiff's last employer's terse statement that plaintiff was fired for attendance and attitude issues does not mean that plaintiff did not have problems sleeping on the job.[4] Nor is it clear that the ALJ considered this evidence as bearing directly upon plaintiff's functional capacity. Instead, it appears to be part of the ALJ's credibility analysis. The court

---

[4] Despite plaintiff's termination from her last job, the ALJ noted that plaintiff has a good work history. (Tr. 18).

believes it was proper for the ALJ to consider this evidence.[5] But, the court does not believe this piece of the ALJ's evidentiary discussion, or the discussion as a whole, is sufficient to adequately explain on this record why the ALJ determined that plaintiff has the RFC to perform substantial gainful employment.[6]

IV. CONCLUSION

In conclusion, for the above-stated reasons the court shall remand this case for further administrative proceedings consistent with this opinion. The court acknowledges that plaintiff has asked the court to consider remand for the award of benefits. The court has considered this request in light of the factors discussed in Ragland v. Shalala, 992 F.2d 1056, 1060 (10th Cir. 1993) and Harris v. Secretary of Health & Human Services, 821 F.2d 541, 545 (10th Cir. 1987). The court does not believe that the record is sufficiently clear and uncontradicted to conclude that plaintiff is disabled and entitled to benefits. Therefore, remand shall be ordered to further develop the record and to discuss the evidence in a manner which follows SSR 96-8p

---

[5] As defendant counsel notes, plaintiff's ability to perform her job undermines her contention that she cannot work due to her alleged impairments. It should be noted in this case, however, that plaintiff's last job was not sedentary, plaintiff never worked a full-time schedule, her employer's answers as to plaintiff's limitations or impairments were not categorical ("no[ne] to my knowledge"), and plaintiff's conditions may have worsened.

[6] It is evident from Dr. Daughety's statement that plaintiff's obesity may have an impact upon the extent of and the ability to treat plaintiff's sleep disorders. The ALJ's decision does not acknowledge this evidence in her discussion of plaintiff's obesity and its impact upon her RFC. This is at odds with SSR 02-01p.

13

and SSR 02-01p.  This remand is ordered pursuant to sentence four of 42 U.S.C. § 405(g).

    **IT IS SO ORDERED.**

Dated this 24th day of September, 2013, at Topeka, Kansas.

                                        *s/Richard D. Rogers*
                                    United States District Judge